UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#27

CIVIL MINUTES - GENERAL

| Case No. | CV 06-5600 PSG (FMOx) | Date | June 25, 2008 |
|---|---|---|---|
| Title | Michael Chad Flanagan v. City of Gardena, *et al.* | | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):  Attorneys Present for Defendant(s):

Not Present  Not Present

**Proceedings:** **(In Chambers) Order GRANTING in part and DENYING in part Defendants' Motion for Summary Judgment**

Before this Court is Defendants' Motion for Partial Summary Judgment. The Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15. After considering the moving and opposing papers, the Court GRANTS in part and DENIES in part Defendants' Motion.

I.    FACTUAL BACKGROUND

Plaintiff in this action is Michael Chad Flanagan ("Plaintiff"), a black male. Defendants are police officer Ward ("Officer Ward") and the City of Gardena ("City").[1] Plaintiff's suit is based on events that transpired on July 21, 2005 in the City of Gardena.

    A.    July 21, 2005 Tasing Incident

On the morning of July 21, 2005, after working overnight at his nearby business, Plaintiff entered Jr. Market intending to purchase a few items to eat. (Plaintiff's Statement of Genuine Issues ("SGI"), ¶ 23.) Plaintiff was wearing a T-shirt, a towel made into a lava-lava skirt in the Polynesian style, and sandals. (SGI, ¶ 24.) Unknown to Plaintiff, a motorist had called in an erroneous report that a black man was walking naked in the streets in Gardena. (SGI, ¶ 25.) Officer Ward observed Plaintiff enter Jr. Market, and thereafter Officer Ward, Officer Lopez and

---

    [1]Defendant Officer Lopez, named in the original Complaint, was voluntarily dismissed from this action on February 20, 2008.  (Dock. No. 86.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#27

CIVIL MINUTES - GENERAL

| Case No. | CV 06-5600 PSG (FMOx) | Date | June 25, 2008 |
|---|---|---|---|
| Title | Michael Chad Flanagan v. City of Gardena, *et al.* | | |

Sergeant Davila followed Plaintiff into the market and asked Plaintiff his name. (SGI, ¶¶ 23-26.) Plaintiff told them his name was Michael Flanagan and that he owned a business up the street. (SGI, ¶¶ 27, 28.) When Plaintiff did not respond to the question quickly enough, one of the officers fired a taser, hitting Plaintiff with taser darts on the left side of his back. (SGI, ¶ 29.) The three officers then jumped on Plaintiff and began tasing him repeatedly on his torso, arms, buttocks and legs, often with two tasers simultaneously (SGI, ¶¶ 29, 30.) Plaintiff was tased over twenty times and subjected to up to 100,000 volts for sustained periods of time. (SGI, ¶ 30.) During the tasing, one of the officers can be overheard on the belt recorder saying, "We tased the crap out of him." (SGI, ¶ 31.) The officers dragged Plaintiff out of the store to the parking lot where they continued to tase him, and at least one officer kicked Plaintiff in his ribs and head. (SGI, ¶ 32.) During the incident, one of the officers pulled off the lava-lava skirt and exposed Plaintiff's genitals to the public. (SGI, ¶ 33.) The officers continued to tase Plaintiff for failure to obey the officers' commands, even though the repeated tasings made that impossible. (SGI, ¶ 31.) According to Plaintiff, the use of the taser caused him excruciating and debilitating pain at the highest levels of the pain scale. (SGI, ¶ 35.) Defendants do not dispute that pictures of Plaintiff's body taken the next day show burn marks all over Plaintiff's back and side and other parts of his body. (SGI, ¶ 34.)

  B. <u>Gardena Police Department Policy and Custom</u>

  Prior to being hired by the Gardena Police Department ("Department"), all Gardena police officers must graduate from a police academy approved by the Commission on Peace Officer Standards and Training ("POST"). (UF, ¶ 1.) In this academy, law enforcement trainees receive training on issues relating to the use of reasonable force, laws of arrest, search and seizure and dealing with the mentally ill. (UF, ¶ 2.)[2] Prior to being hired by the Department, all applicants must pass an oral interview, a medical examination, a background investigation, a psychological evaluation, and a polygraph test. (UF, ¶ 4.) Newly hired officers also go through a POST-approved Field Officer Training ("FTO") program (UF, ¶ 6), which includes making sure that trainees review and are familiar with the Gardena Police Manual ("Manual"). (UF, ¶ 8.)

---

  [2]Plaintiff claims to dispute this fact "to the extent that Defendants are claiming that the officers were properly trained." However, this fact remains undisputed since the fact does not state that Defendants were properly trained, but rather, that law enforcement officers receive certain training. Plaintiff also objects to this fact as vague, ambiguous and misleading. These objections are overruled.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#27

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-5600 PSG (FMOx) | Date | June 25, 2008 |
|---|---|---|---|
| Title | Michael Chad Flanagan v. City of Gardena, *et al.* | | |

All Gardena police officers are required to comply with the Manual, which sets forth the policies and regulations of the Department. (UF, ¶¶ 9, 12.) In addition, officers must comply with any statutory authority that governs police officers. (UF, ¶ 11.) In 2005, the Department had a use of force policy that provided that a Gardena Police officer could only use reasonable force, given the facts and circumstances known to the officers at the time, to effectively bring an incident under control. (UF, ¶ 15.) During the relevant time period, the Department's written policy provided that use of a taser was covered by the Department's general use of force policy. (UF, ¶ 16.) The Department did not implement actual policies and procedures specifically addressing the use of the taser, and had no policy pertaining to when to use the "drive stun" versus the "dart mode" application of the taser. (SGI, ¶¶ 75, 77.) The Department had no policy governing whether officers needed to issue a warning before using a taser, and whether and under what circumstances it would be appropriate for an officer to use multiple and/or simultaneous discharges. (SGI, ¶¶ 78, 80.) In addition, Gardena police officers did not understand that the application of their tasers in "drive stun" mode might cause excruciating pain and severe injury, as well as preclude a subject from complying with orders to submit to custody. (SGI, ¶ 83.)

C. <u>Plaintiff's Complaints</u>

On November 14, 2005, Plaintiff filed a Personnel Complaint alleging that the named officers subjected him to excessive force, including tasing him numerous times. (SGI, ¶ 89.) On November 16, 2005, Lieutenant Ron Mark ("Lt. Mark") was assigned to investigate Plaintiff's Personnel Complaint, which had been converted to a Service Complaint. (SGI, ¶ 92.) Lt. Mark never spoke with the "involved employees" listed in the correspondence from his superior, Captain John Browning. (SGI, ¶ 94.) When shown the scars Plaintiff allegedly received from the taser incident, Lt. Marks stated that he did not believe them to be taser wounds. (SGI, ¶ 96; Marks Depo. at 48:17-24.) Lt. Marks did not attempt to determine whether there were any belt recordings that may have recorded the incident, even though it was recorded on both Officers Ward's and Sproles' belt recordings. (SGI, ¶ 101.)

Captain Browning forwarded Lt. Mark's investigation of Plaintiff's complaint to the Chief of Police, Rod Lyons ("Chief Lyons"). (SGI, ¶ 109.) On December 7, 2005, Plaintiff submitted a second Personnel Complaint to the Department alleging excessive force in violation of his civil rights. (SGI, ¶ 110.) On January 18, 2006, Olivia Verrett, the President of the Carson-Torrance Branch of the NAACP sent a letter to Chief Lyons requesting a formal investigation by the Chief of Police into the Gardena police officers' "acts of violence" against Plaintiff. (SGI, ¶ 112.) On January 23, 2006, Chief Lyons responded to the letter informing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#27**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-5600 PSG (FMOx) | Date | June 25, 2008 |
|---|---|---|---|
| Title | Michael Chad Flanagan v. City of Gardena, *et al.* | | |

Verrett that the Department had investigated Plaintiff's complaint and advised him of the outcome. (SGI, ¶ 113.)

On September 6, 2006, Plaintiff filed a Complaint against Defendants alleging the following violations of state and federal law: (1) violation of the Fourth and Fourteenth Amendments, 42 U.S.C. § 1983; (2) violation of 42 U.S.C. § 1985; (3) violation of Articles 1, 7 and 13 of the California Constitution; (4) Intentional Infliction of Emotional Distress; (5) Assault and Battery; (6) Negligence; (7) False Arrest and Imprisonment; (8) violation of California Civil Code § 52.1; and (9) Intentional Interference with Contractual Relations and Prospective Economic Advantage. Defendants now move for partial summary judgment on the claims against the City of Gardena under 42 U.S.C. § 1983.

II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. *See id.* at 257.

A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *See Anderson*, 477 U.S. at 250-251.

If the moving party seeks summary judgment on a claim or defense for which it bears the burden of proof at trial, the moving party must use affirmative, admissible evidence. Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence in evidence, and must show that the declarant or affiant is competent to testify as to the facts at issue. *See* Fed. R. Civ. P. 56(e)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#27

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-5600 PSG (FMOx) | Date | June 25, 2008 |
|---|---|---|---|
| Title | Michael Chad Flanagan v. City of Gardena, *et al.* | | |

III.    <u>DISCUSSION</u>

Plaintiff alleges that the City is liable under § 1983 for violating his Fourth Amendment rights, by: (1) using excessive force to take him into custody; and (2) detaining and arresting him without probable cause. (Comp. ¶ 32.) The City contends its is entitled to partial summary judgment on these *Monell* claims against the City because any alleged violation of Plaintiff's constitutional rights due to the use of excessive force and unlawful detention was not caused by custom, policy or practice of the Department.

To establish a claim under § 1983 for municipal liability, the plaintiff must establish that the alleged constitutional violation was committed pursuant to an official policy or custom that constitutes the standard operating procedure; that an official with final policy-making authority committed the constitutional tort; or "that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore,* 979 F.2d 1342, 1346-47 (9th Cir. 1992); *see Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690-691 (1978). "[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). A practice is a "custom" only if it is "so persistent and widespread that it constitutes a permanent and well settled city policy." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996) (internal quotation marks omitted); *Gillette v. Delmore,* 979 F.2d 1342, 1349 (9th Cir. 2002).

    A.    <u>Excessive</u> <u>Force</u>

Defendants argue that Plaintiff cannot prove the alleged constitutional violation based on excessive force was caused by an express policy of the City or the City's failure to train its officers. Defendants assert that the Department's express policy provides that its officers may use only reasonable force, a policy consistent with the constitutional standard set forth in *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865 (1989). In addition, Defendants point out that the Department's policy regarding use of tasers by its officers must comply with the general use of force policy.

Plaintiff, on the other hand, contends that the unwritten policy authorizing the use of the taser combined with the Department's failure to implement adequate policies and failure to provide adequate training provide justification for municipal liability.

The Supreme Court has held that a municipality may only be held liable for failure to train when there is a "deliberate indifference." *City of Canton, Ohio v. Harris,* 489 U.S. 378

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#27

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-5600 PSG (FMOx) | Date | June 25, 2008 |
|---|---|---|---|
| Title | Michael Chad Flanagan v. City of Gardena, *et al.* | | |

(1989). However, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390-391.

Plaintiff has presented sufficient evidence to establish a genuine issue of material fact as to whether the City's training regarding taser usage was inadequate. The Department's policy on the use of a taser is governed by the Gardena use of force policy that authorizes officers to use only reasonable force. (UF, ¶ 16.) However, the Department did not implement actual policies specifically addressing the use of the taser. (SGI, ¶ 75.)³

By contrast, both Taser International and the International Association of Chiefs of Police ("IACP") teach that each department must set policies and procedures for the use of tasers in their own department. (SGI, ¶ 61). The Department, which issues tasers manufactured by Taser International (SGI, ¶ 66), admits that it uses the Taser International training materials and that it is a member of the IACP. (Reply at 5; SGI, ¶ 65.) According to the IACP, departmental policies governing the use of tasers should clearly describe the circumstances when the taser may be used and should explicitly describe when taser use is inappropriate, including whether they should be used on mentally challenged persons, persons with known or visible impairments, children or pregnant women. (SGI, ¶ 62.) Furthermore, departmental policies should also include detailed examples of when not to use electro-muscular disruption technology ("EMDT"), including whether it should be used on mentally challenged persons, persons with known or visible impairments, or on vulnerable populations including children or pregnant women. (SGI, ¶ 63.) In addition, the IACP recommends that departmental policies include whether EMDT should be used for compliance, when multiple discharges are acceptable, and when direct stun mode is permissible. (Id.) While Defendants contend that officers in the Department "receive training on the use of Tasers" (Reply at 5), they fail to explain what type of training the officers receive in order to assess whether the training is adequate.

Moreover, the testimony of several officers in the Department demonstrate that they did not receive a training program specifically setting forth the policies and procedures for the use of tasers in their own department. Officer Ward interpreted Department policies as not placing any restrictions on the multiple use of tasers. (SGI, ¶ 51). According to Officer Ward, while the

---

³Defendants do not dispute this fact, but assert that it is not material. (Reply to SGI, ¶ 75.) The Court disagrees, since this fact is probative of the adequacy of the Department's policy regarding taser usage.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#27

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-5600 PSG (FMOx) | Date | June 25, 2008 |
|---|---|---|---|
| Title | Michael Chad Flanagan v. City of Gardena, *et al.* | | |

Department generally recommended that officers refrain from using tasers on persons in a swimming pool, in areas like roofs, or if a person has been maced due to flammability issues, the training Officer Ward received regarding taser usage indicated no other dangers he was aware of. (SGI, ¶ 52; Ward Depo at 53:24-55:9.) Sergeant Davila testified that Gardena police offices are trained that the taser has no ill-effects on an individual, no matter how many times it is used. (SGI, ¶ 52.) Officer Evans testified that based on training she received from the Department, it was her understanding that there were no dangers at all to an individual's health as a result of being tased. (Evans Depo. at 113:1-10.) She further testified that based on the training, she could tase an individual five hundred times, tase a pregnant woman, and tase a mentally ill person, all without adverse health consequences. (Id. at 113:16-20, 117:1-23.) Based on the training received by the Department, other officers understood that they could tase an individual, including a mentally ill individual, a thousand times with no adverse health consequences. (SGI, ¶¶ 53-54.)[4] Officers further understood, based on Departmental training, that they could tase an individual with a heart condition or pacemaker, or an individual who is 100 years old, five hundred times and there would be no adverse health consequences. (SGI, ¶¶ 56-58.)

Based on the Department's broad taser policy, the Taser International and IACP recommendations, as well as the various officer's testimonies regarding their understanding of the consequences of taser usage, the Court concludes a genuine issue of material fact exists whether the Department had an inadequate training program amounting to deliberate indifference to the rights of persons with whom the police came into contact. Accordingly, a genuine issue of material fact also remains as to whether the Department had a well-settled custom, policy or practice that served as the moving force behind Officer Ward's taser use. The Court DENIES summary judgment as to the excessive force portion of the *Monell* claims.

      B.    <u>False Arrest / Unlawful Detention</u>

Plaintiff's Opposition focuses entirely on the Department's policy and custom regarding its use of excessive force, but fails to address its policy and custom regarding false arrest or unlawful detention. Since Plaintiff has failed to present any evidence on these aspects of his *Monell* claim, he has failed to demonstrate that there are any genuine issues of material facts in dispute. Therefore, the Court GRANTS summary judgment as to the false arrest/illegal

---

[4]Defendants do not dispute this fact, but object to it as irrelevant and not material. The Court overrules this objection. Under Fed. R. Evid. 402, these facts are relevant to Plaintiff's contention that the Department has a policy of promoting the unrestricted use of tasers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#27**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-5600 PSG (FMOx) | Date | June 25, 2008 |
|---|---|---|---|
| Title | Michael Chad Flanagan v. City of Gardena, *et al.* | | |

detention portion of the *Monell* claim.

IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's motion for partial summary judgment. As to the *Monell* claim based on unlawful detention and arrest, Defendants' motion is GRANTED. As to the *Monell* claim based on excessive force, Defendants' motion is DENIED.

IT IS SO ORDERED.

                                                                                      :
                                                                     Initials of Preparer